## Charles F. Wolff et al., Plffs. in Err., *v.* Agnes A. Mackrell, Exrx. of James Mackrell, Deceased.

In an action on two promissory notes, executed with a mark, where the alleged maker, the witness to the execution of the notes (in whose handwriting they were), and the payee were dead, *held*, that the notes were not sufficiently identified to be admissible in evidence by a witness who testified that about twenty years before the trial he went, with the payee, to a person having the same surname as the alleged maker, who, on being shown by the payee certain papers which the witness thought were the notes in suit, said they were his notes and were all right.

(Argued October 24, 1887.   Decided November 7, 1887.)

October Term, 1887, No. 24, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.   Error to the Common Pleas No. 2 of Allegheny County to review a judgment of compulsory nonsuit in an action of debt.   Affirmed.

This was an action of debt brought by Charles F. Wolff, and others, heirs of Charles F. Wolff, deceased, against Agnes A. Mackrell, executrix of James Mackrell, who died in 1879, to recover on two notes under seal, alleged to have been executed by a mark and delivered by James Mackrell in his lifetime. Emily Wolff, who witnessed the notes, and who was a daughter of Charles F. Wolff, deceased, died in 1862.   Augustus Wolff,

NOTE.—Upon the first trial of this case, the notes were proved by showing that the signature of the witness was in her handwriting. Upon appeal this evidence was held insufficient. Mackrell v. Wolf, 104 Pa. 421.

who also witnessed one of the notes, was a brother of Emily Wolff, and died the same year.

Upon a former trial of the case plaintiff was permitted to prove the handwriting of Emily Wolff, the witness, and the notes were admitted in evidence and a verdict and judgment for the full amount was obtained by plaintiff. A writ of error was sued out and this judgment was reversed and a *venire facias de novo* awarded, on the ground that it was not competent to prove the notes by proving the signature of Emily Wolff, she having been an interested party. (See Mackrell v. Wolf, 104 Pa. 421).

The notes in suit were as follows:

Exhibit 1.

Pittsburgh, January 2, 1859.

I, James Mackrell, has received from Mrs. Charles Frederick Wolff the sum of $600 in gold belonging to the heirs of Charles Frederick Wolff. I, James Mackrell, will pay the same amount to the heirs of Charles Frederick Wolff inside of twenty years, with 6 per cent interest. I, James Mackrell, hold my hand upon this pen until signed and sealed.

James Mackrell –|– [Seal.]

Witness

Emily Wolff.

Exhibit 2.

Pittsburgh, June 14, 1861.

I, James Mackrell, has received from Mrs. Charles Frederick Wolff the sum of $400. I, James Mackrell, will pay the same to Mrs. Charles Frederick Wolff inside of eighteen years, or, in case of death, I will pay the children of Mrs. Charles Frederick Wolff, with 6 per cent interest.

James Mackrell –|– [Seal.]

Witness

Emily Wolff.
Augustus Wolff.

On the second trial, now under review, plaintiff called as a witness, among others, one Frederick Pilgrim, who testified (about twenty years before the trial) that in 1866 he went to Mrs. Wolff, the payee of the notes (who died in 1878), to borrow money of her, and went with her to James Mackrell's house;

that Mrs. Wolff took two notes with her, folded up, which were signed with a cross, which he supposed were the notes in suit; that Mrs. Wolff showed the notes to Mr. Mackrell, and he said the notes were all right, but that the money was better in his hands.

On the cross-examination, the witness testified that he did not read the notes nor have them in his hands, but they looked the same as the notes in suit; that he did not know James Mackrell, but that Mrs. Wolff told him that the man they saw was James Mackrell, and that the papers were notes.

On redirect examination the witness testified that when he went to Mrs. Wolff for money, she said she would go down to Mr. Mackrell; that when she spoke to the man she called him Mr. Mackrell, and he did not say that was not his name; that he said they were his notes, and were just as good as money.

Plaintiffs then offered the notes in suit in evidence, but they were objected to by defendant on the ground that there was no proof identifying and connecting James Mackrell with the notes in suit.

Plaintiffs thereupon withdrew the offer and called as a witness Mr. C. E. Mills, who testified as follows:

I knew Emily Wolff. She is dead. I don't remember when she died; quite a number of years ago; it was about the time of the war. I think I know the handwriting.

(Plaintiffs' counsel proposes to prove by the witness that the name Emily Wolff on these notes as witness is in said Emily Wolff's handwriting. It is admitted that she is one of the children of Charles Frederick Wolff, deceased, and that she has been dead for over twenty years. Defendant's counsel objects to the offer for the reason that the attesting witness was at the time of the execution of these notes an interested party, and the attesting witness being now dead would, if living, be an interested party, and would be an incompetent witness upon the trial of this case, and that the notes therefore cannot be proved by proving her handwriting. Objection sustained.)

(Plaintiffs' counsel proposes to prove then by the witness that the body of each of these notes is in the handwriting of Emily Wolff, who died about 1862 or 1863; this for the purpose of showing that these notes date back to that time. Objected to as incompetent and irrelevant. Objection sustained.)

*Q.* Can you give us what year Emily Wolff died in?

*A.* About the year of the war—the second or third year of the war.

*Q.* Did you know her handwriting?

*A.* Yes; I believe I did.

*Q.* State whether you were in the habit of corresponding with her?

*A.* Yes, sir.

(Plaintiffs' counsel proposes to prove by the witness on the stand, who was acquainted with the handwriting of Emily Wolff, that all the writing upon Exhibit No. 1 is in the handwriting of said Emily Wolff, who died in 1861 or 1862, and that all the writing of Exhibit No. 2 excepting the name "Augustus Wolff," is in the handwriting of said Emily Wolff. Objected to as incompetent and irrelevant. Objection overruled and bill sealed for defendant.)

(Exhibit No. 1 shown witness.)

*Q.* In whose handwriting is the body of that note and all the handwriting that is there?

*A.* That looks very much like the handwriting of Emily Wolff. It is my opinion it is hers. I say the same as to Exhibit No. 2, with the exception of the name "Augustus Wolff." It looks like it.

*Q.* Do you mean the whole thing; the names; all of it?

*A.* Well, it looks like it.

Plaintiffs then repeated the offer of the notes in evidence, and the objection thereto was renewed and sustained.

Thereupon the court, on defendants' motion, granted a judgment of compulsory nonsuit, with leave to take it off.

A motion to take off the nonsuit was subsequently made to the court in banc, which refused the same in the following opinion, per WHITE, J.:

The notes were not admitted in evidence, and without them the plaintiffs had no cause of action. The question therefore is, Was there sufficient evidence to admit the notes in evidence?

The notes were signed by marks. There was no evidence as to the execution of the notes, and no sufficient testimony of any acknowledgment by Mackrell. The testimony of the witness, Pilgrim, was all there was that could possibly justify admitting

the notes in evidence. He could not, and did not, identify the notes. Some of his testimony might be corroborative of an indebtedness, but that amounts to nothing without an identification of the notes.

Motion to take off nonsuit refused.

Plaintiffs thereupon took this writ, assigning for error the action of the court: (1) In sustaining defendant's objections to the offers of the notes; and (2) in granting the motion for a compulsory nonsuit and refusing the motion to take off the same.

*S. A. McClung,* for plaintiffs in error.—The notes in suit, it was proven, were in existence as early as 1862, for the party whose handwriting they are in died in that year. They purported to be the notes of James Mackrell to Mrs. Wolff and the Wolff heirs. The second note was payable to Mrs. Wolff during her lifetime. It is shown clearly that in the year 1866 Mrs. Wolff went to James Mackrell with two notes of his; the witness says that there were two of them and Mr. Mackrell called them notes; acknowledged that they were his; said that they were all right and gave reasons why he would not pay them. It is true that the jury might not have found that these were the notes admitted by Mackrell to be his notes, but we submit that there was much more than a scintilla of evidence of their identity. James Mackrell undoubtedly had money belonging to plaintiffs; it was secured by notes which had the general appearance of those sued on; were signed by a cross. All these things accord with the assertion of plaintiffs, that the notes examined and admitted by Mackrell were the notes in suit, whose existence dates back, as was shown, several years prior to 1866, and which, so far as appears, are the only papers that ever existed to which Mackrell's admission could apply.

*J. Erastus McKelvy,* for defendant in error.—It will be perceived that these notes are very peculiar instruments. They were not due at the time of this alleged visit of Pilgrim's. They were not in Mackrell's handwriting, and were executed by a mark. There is nothing in the notes themselves to distinguish them or in any way to connect them with the party charged; and the rule in such case requires stricter proof showing connection and identification of the party charged with the mark. White-

locke v. Musgrove, 1 Cromp. & M. 511; Reap v. Featherstone, 4 Luzerne Legal Reg. 4; Wharton, Ev. § 696; 2 Phillipps, Ev. p. 425.

Per Curiam:

The notes in controversy were not sufficiently proved to entitle them to go to the jury, and the learned judge could not have done otherwise than nonsuit the plaintiff.

Judgment affirmed.